UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA

WADE HORTON,

    Plaintiff,

vs.                                                    Civil Action File No.

MACON-BIBB COUNTY
TRANSIT AUTHORITY,

    Defendant.
_____

## COMPLAINT

### I. INTRODUCTION

1. This is an action for discrimination on the basis of disability, brought pursuant to Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131, and Section 504 of the Rehabilitation Act of 1973 (Rehabilitation Act), 29 U.S.C. § 701.

2. Defendant Macon-Bibb County Transit Authority ("MTA") improperly withheld use of its complementary ParaTransit services from the Plaintiff ("Mr. Horton") from December 8th, 2018, through April 1, 2019. As such, it constituted a violation of both the ADA and the Rehabilitation Act.

3. Defendant Macon-Bibb County Transit Authority also improperly restricted use of its complementary ParaTransit services for <u>all</u> users from March 23rd, 2020, through May 7th, 2020, by limiting ParaTransit destinations to those the Defendant deemed consistent with "MEDICAL NECESSITY," which it defined as including only, "Dialysis, doctor appointments, to grocery store & to pharmacy for medications." The Defendant's restrictions upon its passengers' usage of its complementary ParaTransit service constituted a clear violation of Federal Transit Administration ADA regulations.

4. The Defendant's clear violations of the ADA and the Rehabilitation Act caused the Plaintiff to suffer extensive injuries, including out-of-pocket expenses, repeated and severe inconvenience, physical hardship, physical and mental symptoms of stress, loss of opportunities for companionship and loss of opportunities for participation in public life.

5. The Plaintiff seeks declaratory relief to prevent future noncompliance with the ADA and Rehabilitation Act. The Plaintiff further seeks an appropriate award of damages.

6. The Plaintiff also seeks to recover his attorneys' fees and costs of litigation.

## II. JURISDICTION AND VENUE

7. This Court has original, federal-question jurisdiction over this action, pursuant to the ADA and Rehabilitation Act.

8. Mr. Horton is a resident of Jones County, Georgia, which is located within this district and division.

9. This Court has personal jurisdiction over Defendant. The tortious actions in question occurred in the City of Macon, Georgia, in Bibb County, Georgia, and in Jones County, Georgia. The Defendant's principal place of business is in Bibb County, Georgia. The City of Macon, Bibb County, and Jones County are all located within this district and division

10. Venue is proper in this Court, because City of Macon, Bibb County, and Jones County are all located within this district and division and the events in question occurred therein.

## III. PARTIES

11. Plaintiff Wade Horton is a citizen of the State of Georgia and resident of Jones County, Georgia.

12. Mr. Horton is blind.

13. Mr. Horton is a qualified individual with a disability.

14. Defendant Macon-Bibb County Transit Authority is a municipal entity operating as a business under the color of law in the State of Georgia and may be served with process through its President and Chief Executive Officer, Craig Ross, at 200 Cherry Street, Suite 100, Macon, Georgia 31206.

15. The MTA is a public entity within the meaning of Title II of the ADA.

## IV. FACTS

16. The Plaintiff, Wade Horton is blind. His blindness, together with his other medical conditions, make it unsafe for him to use a fixed-route public transit system.

17. Mr. Horton has, instead, regularly used the Macon-Bibb County Transit Authority's complementary ParaTransit services for more than a decade. He has relied upon this ParaTransit service as a very frequent source of transportation services, both for himself and for his mother, Mrs. Ruby Horton.

18. Mr. Horton's mother has very significant mobility and cognitive disabilities. She relies upon a wheelchair for her mobility.

19. Mrs. Horton is a qualified individual with a disability.

20. Mrs. Horton resides with Mr. Horton and his wife in Jones County, Georgia. Although the Horton's home is in Jones County, Jones County shares a boundary with Bibb County. At all times relevant to this Complaint, the Horton's home has been located very close to this boundary between Jones County and Bibb County. Both ends of the street Mr. Horton lives on are in Bibb County and his home is only three houses away from the boundary between Bibb County and Jones County. Mr. Horton has frequently traveled to businesses and service providers within Macon-Bibb County and he has regularly taken his mother to medical appointments there.

21. Mr. Horton has relied heavily upon the MTA's ParaTransit service for his daily transportation: for shopping trips, trips to his gym, to medical appointments, and to community events, among other destinations. He also relied upon the ParaTransit service to transport his mother to her medical appointments. Mrs. Horton was unable to perform transfers in and out of a vehicle and needed to use an L-Van that could accommodate her wheelchair.

22. At all times in question, Mr. Horton's residence has been within three-quarters of a mile of an MTA fixed route. In addition, he has sometimes

used ParaTransit services for transportation between two points within Bibb County.

23. Mr. Horton regularly attended public meetings of the MTA and often participated during the public comment portion of these meetings. He sometimes spoke during the public remarks section of the program, advocating for service improvements and against cutbacks in services. During an August 2018 Board Meeting of the MTA there was discussion of possible cutbacks in routes and services. Mr. Horton presented remarks during the public comment portion of the meeting, expressing concerns about the impact the proposed service cuts would have on some riders.

24. The MTA Board convened again on September 4th, 2018, at a special called meeting. During that meeting, the Board voted to change the eligibility requirements and service area for their complementary ParaTransit service. Following the change, only residents of the City of Macon or Bibb County would be eligible to receive ParaTransit service from the MTA. In addition, the system's geographic service area would be strictly limited to the City of Macon and Bibb County.

25. At the September 2018 special called Board Meeting, the MTA's President noted during the discussion of these proposed changes to ParaTransit eligibility rules that he had reviewed approximately 2,000 ParaTransit applications and had found only one application in which the ParaTransit rider lived outside of both the City of Macon and Bibb County. That rider, he stated, was in Jones County. The MTA President remarked that "our focus is on servicing our Bibb County customers." Mr. Horton was not in attendance at that Board meeting.

26. The September 2018 changes to ParaTransit eligibility and service area policies reflected a deliberate indifference to the applicable provisions of the ADA and the Rehabilitation Act. They were motivated by both a wrongful plan to limit access to Defendant's complementary ParaTransit services to persons who lived within certain governmental jurisdictions and by a desire to retaliate against the Plaintiff for his prior utilization of the system and his advocacy on behalf of himself and other consumers of MTA's services.

27. On or about September 24th, 2018, the MTA, through its legal counsel, mailed a letter to Mr. Horton. The letter stated that the MTA Board had adopted a Resolution limiting the service area of its ParaTransit service to

the boundaries of Macon-Bibb County, Georgia.  The letter also stated that the MTA intended to suspend Mr. Horton's eligibility for its ParaTransit services because he was a resident of Jones County.

28. On December 6th, 2018, Mr. Horton received notice from the MTA that the following day was the last day that he would be eligible to receive ParaTransit services from the MTA.

29. Starting on December 8, 2018, the MTA refused to provide its complementary ParaTransit services to Mr. Horton or to his mother.

30. When Mr. Horton attempted to schedule ParaTransit pickup from his home, his requests were refused.  Similarly, when Mr. Horton attempted to schedule ParaTransit rides from one point within Bibb County to another point in Bibb County, his requests were refused.  He was told that he could not use the system at all, even for service that fell wholly within Bibb County.

31. This denial of services had a devastating impact on Mr. Horton and his family.  Without the MBA's ParaTransit service, he was unable to escort his mother to medical appointments on his own, or to access an L-Van.    Mrs. Horton relies heavily on a wheelchair for transportation, cannot perform transfers in and out of regular vehicles, and needed to be transported by L-Van.

Without the ParaTransit service, Mr. Horton and his wife had to essentially lift, shove and pull his mother into the back seat of a car to transport her – something that was very difficult for all of them.

32. Mr. Horton had previously been a frequent user of the MTA's ParaTransit service. He relied upon it to go to the gym and to shop. He also used it to attend public meetings, where he both participated in the life of the community and visited with friends. When he was cut off from the service, he had to beg rides from friends, use some of his limited funds for Uber, or try to arrange commitments for times that his wife could be off work. Although he was able to make some trips by juggling these options, his level of activity and engagement in his community dramatically shrank.

33. Mr. Horton sought legal assistance regarding the MTA's denial of ParaTransit services to him. Following several communications between Mr. Horton's counsel and the legal counsel for the MTA, the MTA eventually reinstated ParaTransit services to Mr. Horton.

34. From March 23rd, 2020, through May 7th, 2020, Defendant MTA also wrongfully restricted use of its complementary ParaTransit services for <u>all</u> its passengers by limiting ParaTransit destinations to certain, very limited

destinations.

35. During that time period, passengers were only permitted to travel to destinations that the MTA deemed consistent with "MEDICAL NECESSITY," which it defined as including only, "Dialysis, doctor appointments, to grocery store & to pharmacy for medications."

36. Mr. Horton once again sought legal assistance regarding the MTA's unlawful restriction of ParaTransit services. Following several communications between Mr. Horton's counsel and the legal counsel for the MTA, the MTA lifted these unauthorized restrictions upon the scope of services to be made available to MTA's ParaTransit passengers.

37. Complementary ParaTransit service is intended to enable its riders to live more independently. Its use is not limited to medical appointments or other trips that third parties may consider "necessary."

LEGAL CLAIMS

**Count I – Title II of the Americans with Disabilities Act (ADA)**

38. By this reference, Plaintiff incorporates the above factual statements, as if fully stated herein.

39. Title II of the ADA provides that no "public entity" shall discriminate against an individual with a disability with respect to said entity's "services, programs, or activities."

40. Defendant MTA is a "public entity" covered by the ADA. As such, it is subject to the regulations promulgated pursuant to the ADA.

41. The MTA's denial of services to Mr. Horton and his mother based on their county of residency is wholly inconsistent with the federal regulations governing public transportation providers. Federal regulation 49 CFR § 37.123, when read in conjunction with 49 C.F.R. § 37.121, requires public entities operating fixed route transit systems to provide complementary Paratransit service to ADA Paratransit eligible individuals and, in addition, sets certain minimum requirements for the operation of such complementary ParaTransit systems.

42. The Federal Transit Administration, through an FTA Circular issued on November 4, 2015, provided definitive guidance regarding the Americans with Disabilities Act requirements for complementary ParaTransit systems.

43. This definitive guidance from the Federal Transit Administration explained that the ADA requires public transit agencies to make service

available to all individuals whose disabilities make them eligible to use the complementary ParaTransit system. An agency cannot limit eligibility for service on the basis of a passenger's community of residence. *See* Appendix D to § 37.123. If an otherwise eligible applicant is able to travel to a point within an agency's complementary Paratransit service area and wishes to use complementary ParaTransit within the service area, these regulatory requirements obligate the agency to grant the applicant eligibility and accommodate the trip request. *See* FTA Circular 4710.1 (Americans With Disabilities Act Guidance) at § 9.2.2.

44. The MTA lacked the authority to limit its ParaTransit services only to residents of Bibb County. The agency's refusal to honor the Plaintiff's right to receive ParaTransit services from the MTA within the geographic area that the transit agency serves constituted a violation of his rights under Title II of the Americans with Disabilities Act.

45. The Plaintiff was and is entitled to receive ParaTransit transportation to and from his home, even though it is not located in Macon-Bibb County. FTA rules require the MTA to provide full service to all points within the 3/4-mile range of any point on the MTA's fixed route system unless

the MTA can demonstrate both that it is legally prohibited from providing service outside to locations in the other jurisdiction <u>and</u> that it has taken all practicable steps to get around the problem so that it can provide service throughout its service area. The MTA has failed to make such a demonstration here. *See* FTA Circular 4710.1 (Americans With Disabilities Act Guidance) at § 8.4.4.

46. The Defendant's restrictions upon its passengers' usage of its complementary ParaTransit service from March 23rd, 2020, through May 7th, 2020, also constituted a clear violation of Federal Transit Administration ADA regulations. This policy constitutes a clear violation of FTA regulations that prohibit agencies from imposing restrictions or priorities based on the purpose of the proposed ParaTransit trip. *See* 49 CFR 37.131(d).

47. Plaintiff is entitled to relief under Title II of the ADA, including declaratory relief that provides clear guidance to the MTA regarding their obligations to ParaTransit passengers.

48. Plaintiff is entitled to recover compensatory damages for the extensive harm he experienced as a result of the Defendant's violations of the ADA described herein. The harm suffered by the Plaintiff included, but is not

limited to, out-of-pocket expenses, increased financial stress, repeated and severe inconvenience, physical hardship, physical and mental symptoms of stress, loss of opportunities for companionship and loss of opportunities for participation in public life.

49. The Plaintiff's injuries were a direct result of the Defendant's deliberate indifference to the rights of the Plaintiff and other ParaTransit passengers.

50. The facts presented herein evidence deliberate indifference by the Defendant, in that the policies at issue were both adopted by individuals with policymaking authority for the MTA and directly contravened specific governing regulations.

51. Plaintiff is entitled to additional relief under the ADA, including attorneys' fees and costs.

### Count II – Rehabilitation Act

52. By this reference, Plaintiff incorporates the above factual statements as if fully stated herein.

53. The Rehabilitation Act provides that no entity receiving federal funds shall discriminate against an individual based on that individual's handicap.

54. The MTA is an entity that receives federal funds.

55. The Rehabilitation Act prohibits discrimination coextensive to Title II of the ADA.

56. Defendants are liable to Plaintiff under the Rehabilitation to the same extent as under the ADA, as set forth *supra*.

WHEREFORE, Plaintiff prays:

a. for a trial by jury;

b. for judgment in his favor on the claims asserted herein;

c. for an order declaring the Macon-Bibb County Transit Authority was in violation of the ADA and Rehabilitation Act with regard to their failure to provide required ParaTransit services for the Plaintiff;

d. that Defendant be required to pay compensatory damages to Plaintiff, in an amount determined by the enlightened conscience of the jury;

f. that Plaintiff be awarded reasonable attorneys' fees and costs; and

g. that the Court grant other legal and equitable relief as the Court finds appropriate.

Respectfully submitted this September 1, 2020.

                                                */s/ Georgia K. Lord*
                                                GEORGIA LORD
                                                Georgia Bar No. 447932

                                                COUNSEL FOR PLAINTIFF

**Radford & Keebaugh, LLC**
315 West Ponce de Leon Avenue
Suite 1080
Decatur, GA 30030
Telephone: 678-271-0305
Fax: 678-271-0309
Email: georgia@decaturlegal.com